**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**JOHN G. McNEIGHT and**
**VICKI L. McNEIGHT,**

                              **Plaintiffs,**                    **06-CV-0436A(Sr)**

**v.**

**RAILCAR CUSTOM LEASING LLC, and**
**ECDC ENVIRONMENTAL, LC,**

                              **Defendants.**

---

## <u>REPORT, RECOMMENDATION AND ORDER</u>

              This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #3.


              Currently before the Court is: (1) a motion for summary judgment  (Dkt.

#37), by defendant Railcar Custom Leasing, LLC ("RCL"), seeking dismissal of

plaintiffs' complaint and of the cross-claims of ECDC Environmental, LC ("ECDC"), as

well as a conditional order of contractual indemnification against ECDC; (2) a motion for

partial summary judgment (Dkt. #42), pursuant to New York State Labor Law § § 200;

240(1); and 241(6), by plaintiffs; and (3) a motion for summary judgment (Dkt. #47), by

ECDC seeking dismissal of plaintiffs' complaint and of RCL's cross-claims and a

conditional order of common law indemnification against RCL.  For the following

reasons, it is recommended that RCL's motion be granted; plaintiffs' motion be denied;

and ECDC's motion be granted.

## BACKGROUND

In accordance with a Railcar Equipment Lease dated as of April 30, 2004, ECDC agreed to lease 150 railcars that RCL was financing through First Union Rail Corporation.  Dkt. #39-2.  Pursuant to the Railcar Equipment Lease, RCL was required to modify the railcars in accordance with the scope of work set forth in a rider to the Railcar Equipment Lease.  Dkt. #39-2, p.3.  At ECDC's suggestion, RCL engaged Ebenezer Railcar Services, Inc. ("Ebenezer"), to perform the modifications to the railcars.  Dkt. #39, ¶ 6.  Although correspondence between Ebenezer and RCL indicates that ECDC was involved in the scope of work required for the railcars, it is clear that RCL financed the railcar modifications.  Dkt. #39, ¶ 6; Dkt. #49-15, pp.2-8; Dkt. #49-18, pp.1-5.

The Railcar Equipment Lease between RCL and ECDC provides as follows:

> 4.     Delivery and Acceptance of Cars.  Lessor, at its expense, will cause each Car to be tendered to Lessee at the location designated in the applicable rider hereto.  Prior to such delivery, Lessor shall modify the Cars in accordance with the scope of work attached to the applicable rider hereto (the "Scope of Work") and the Cars, as modified in accordance with the Scope of Work, shall be in interchange condition and shall be made available for inspection by Lessee.  Lessee shall, within seven (7) days after notice from Lessor that the Cars, or any of them, are available for inspection and the location of the Cars, cause its authorized inspectors or representatives to inspect the Cars, and if such Cars are found to be acceptable to Lessee accept delivery of such Cars (or so many of such Cars as are acceptable to Lessee) and to execute and deliver to Lessor a certificate in the form of Exhibit C hereto signed by a responsible officer of Lessee acknowledging the delivery of the Cars by Lessor,

> whereupon such Cars shall be deemed to have been
> delivered to and accepted by Lessee under this Lease and
> shall be subject thereafter to all the terms and conditions of
> this Lease, and such Lessee's certificate shall be absolutely
> binding upon Lessee.

Dkt. #39-2, pp.3-4.  In accordance with this provision in the lease, Rider 1 to the Railcar

Equipment Lease defines the lease commencement date as "[t]he date of acceptance

by Lessee of such Car, as evidenced by the Certificate of Acceptance executed by

Lessee or as otherwise provided in Section 4 of the Lease."  Dkt. #39-3, p.6.


The Railcar Equipment Lease required ECDC to insure the cars,

stating:

> 12.     Insurance.  Lessee will at all times after acceptance
> of each Car and prior to the return of such Car to Lessor . . .
> and at its own expense, cause to be carried and maintained
> property insurance and public liability insurance in respect of
> such Car . . .

Dkt. #39-2, p.10.  The Railcar Equipment Lease also included the following

indemnification clause:

> 10.     Indemnification.  Except as otherwise provided in this
> Lease, Lessee hereby agrees to indemnify, protect and keep
> harmless, on an after tax basis, Lessor, its employees,
> agents, successors and assigns ("Indemnified Persons")
> from and against any and all liabilities, including reasonable
> attorney's fees, of whatsoever kind and nature ("Claims"),
> arising out of any breach of this Lease by Lessee, or arising
> out of the possession, use, condition, operation, selection,
> delivery, or return of the Cars or any Car, regardless of
> where, how and by whom operated other than those arising
> from the gross negligence or willful misconduct of Lessor.

Dkt. #39-2, p.9.

The plaintiff, John G. McNeight, was employed at Ebenezer as a painter. Dkt. #37-3, p.6.  Plaintiff had painted AWX 4121 on August 5, 2004.  Dkt. #37-3, p.14. Once the paint was dry, the car was moved outside the paint shop to make room for another railcar to be painted.  Dkt. #37-3, pp.18-19.  No more than four railcars could fit inside the paint shop at anyone time.  Dkt. #37-3, p.11.  On the morning of August 6, 2004, plaintiff recalled that there were six railcars coupled together on the tracks outside the paint shop.  Dkt. #37-3, p.20.  AWXX 4121 was the railcar closest to the paint shop.  Dkt. #37-3, pp.20-21.

Plaintiff used the radio to request the locomotive to bring AWXX 4121 into the paint shop to be stenciled. Dkt. #37-3, pp.32-33.  Tim Cartwright was operating the locomotive which was pushing approximately six railcars.  Dkt. #37-3, p.34.  Plaintiff guided the locomotive while the railcar furthest from the locomotive coupled with the B end of AWXX 4121.  Dkt. #37-3, pp.35-36.  Plaintiff then walked to the other end of AWXX 4121 so that he could uncouple the A end of AWXX 4121 from the remaining cars on the track.  Dkt. #37-3, p.38.  To uncouple the railcar, plaintiff first needed to set the manual brake and block the wheel of the railcar attached to AWXX 4121.  Dkt. #37-4, p.1.  Plaintiff did not recall what railcar was attached to the A end of AWXX 4121, but knew that it wasn't another AWXX railcar because of the location of the brake.  Dkt. #37-4, pp.23-24.  Specifically, the brakes on the AWXX railcars were located towards the top of the car, while the brake he set on the attached car was towards the ground. Dkt. #37-4, pp.33-34.

Plaintiff boarded AWXX 4121, stepped from the brake pipe to the center sill, stepped across to the other railcar and turned the brake on the other railcar until it set.  Dkt. #37-4, pp.2 & 12-15.  Plaintiff then placed both feet back on the center sill.  Dkt. #37-4, p.15.  As he was crossing back to AWXX 4121 with the radio in his right hand and his left hand free, plaintiff's left foot stepped down onto the brake pipe and slipped, causing plaintiff to fall backwards approximately six feet to the ground.  Dkt. #37-4, pp.2 & 12- 19.  Plaintiff observed that the brake pipe was covered with morning dew and opined that the dampness caused his foot to slip.  Dtk. #37-4, pp.19-20.  Plaintiff was wearing sneakers.  Dkt. #37-4, p.19.

Plaintiff explained that he would have had to have walked the length of approximately six railcars in each direction in order to set the brake from the ground on the opposite side of the tracks.  Dkt. #37-4, pp.10-11.  In addition, he noted that he was on the road side of the tracks and that the opposite side of the tracks was uneven, overgrown terrain.  Dkt. #37-4, p.50.  He also noted that safety harnesses were available in the paint shop and that their use was required to clean the insides of a tank car or to  work on the top of a railcar.  Dkt. #37-4, pp.27-28.

The accident report indicates that Mr. McNeight

was switching cross over on AWXX 4121 when crossing over put foot on EOC trainline @ angle cock and slip [sic] off and fell on his back and elbow [sic] hit the stone.  Car was still wet from the morning dew.

Dkt. #49-10, p.2.  The accident report opines that the accident happened because "there is no xover [sic] hand hold or step at the end of the AWXX cars."  Dkt. #49-10,  p.2.

## DISCUSSION AND ANALYSIS

## Summary Judgment

_____Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a pro se plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982.  A party seeking to defeat a motion for

summary judgment

> must do more than make broad factual allegations and
> invoke the appropriate statute.  The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the
> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).


## New York's Labor Law § 240(1)

Section 240(1) of New York's Labor Law provides as follows:

> All contractors and owners and their agents . . . in the
> erection, demolition, repairing, altering, painting, cleaning or
> pointing of a building or structure shall furnish or erect, or
> cause to be furnished or erected for the performance of
> such labor, scaffolding, hoists, stays, ladders, slings,
> hangers, blocks, pulleys, braces, irons, ropes and other
> devices which shall be so constructed, placed and operated
> as to give proper protection to a person so employed.


### Contractors, owners and agents

ECDC

ECDC argues that it cannot be held liable pursuant to Labor Law 240(1)

because it was neither an owner, contractor or agent.  Dkt. #42-10, p.2.


Plaintiff responds that ECDC is liable because it "developed the scope of

work document for these railcars in conjunction with [RCL] and Ebenezer" and

"inspected each and every car."  Dkt. #48, p.4.

ECDC replies that

It is an irrefutable fact that RCL hired and paid Ebenezer Railcar Services to perform the modification work to the railcars. ECDC neither contracted for nor supervised the modification work.

Dkt. #58-3, p.3.

The record before the Court is clear that ECDC did not possess an ownership interest in the railcars at the time plaintiff was injured. RCL financed the railcar modifications and ECDC had no obligation for the railcars until they were modified, inspected and individually accepted by ECDC. Dkt. #39, ¶ 6; Dkt. #39-2, pp.3-4; Dkt. #49-16, pp.2-8; Dkt. #49-18, pp.1-5. Specifically, Rider 1 to the Railcar Equipment Lease defines the commencement date for the lease between RCL and ECDC as the date of acceptance of such railcar by ECDC, as evidenced by, *inter alia*, the Certificate of Acceptance executed by ECDC. Dkt. #39-3, p.6.

Although ECDC was involved in determining the scope of work to be performed on the railcars, that is insufficient to establish liability as an owner. *See Wehmeyer v. Port Auth. of N.Y. & N.J.,* 248 A.D.2d 187 (1st Dep't 1998) (defendant was not the owner of the work area where plaintiff fell but "was only a prospective sub-lessee" of the property & co-defendant's survey of the site to see what was required and review of installation requirements with the subcontractor that employed the plaintiff did not constitute sufficient control to give rise to section 240(1) liability); *Saaverda v. East Fordham Road Real Estate Corp*., 233 A.D.2d 125 (1st Dep't 1996) (summary

judgment proper where defendant "was an out-of-possession lessee of the property who neither contracted for nor supervised the work that brought about the injury, and had no authority to exercise any control over the specific work area that gave rise to plaintiff's injuries."). Moreover,

> An agency relationship for purposes of section 240(1) arises only when work is delegated to a third party who obtains the authority to supervise and control the job. Where responsibility for the activity surrounding an injury was not delegated to the third party, there is no agency liability under the statute.

*Blake v. Neighborhood Housing Servs. of N.Y. City*, 1 N.Y.3d 280, 293 (2003). As there is no indication that ECDC supervised Ebenezer or instructed them as they undertook the modifications of the railcars, ECDC cannot be held liable as an agent. Accordingly, it is recommended that ECDC's motion for summary judgment be granted with respect to the Labor Law § 240(1) cause of action.


RCL

RCL argues that it cannot be held liable as an owner or general contractor because plaintiff was injured while setting the brake on a railcar other than those being modified by Ebenezer for ECDC. Dkt. #38, p.12.


Plaintiff responds that although he was setting the brake on the adjoining car, he fell from the AWXX 4121 car. Dkt. #48, pp.2-3. Plaintiff also argues that RCL is liable as an owner and contractor because it leased the AWXX cars from First Union Rail Corporation and hired Ebenezer to perform the refurbishing work on the AWXX cars. Dkt. #48, p.3.

RCL has not established entitlement to summary judgment on this issue as it was the owner of the railcar plaintiff crossed from and was in the process of returning to at the time of the fall.  Accordingly, it is recommended that this aspect of RCL's motion for summary judgment be denied.

### Covered activities

RCL and ECDC argue that plaintiff was not engaged in a covered activity at the time of his injury.  Dkt. #38, p.11; Dkt. #42-10, p.4.

Plaintiff argues that plaintiff "was both painting and altering the railroad car, and had the previous day been involved in cleaning the railcar."  Dkt. #48, p.5.  Plaintiff asserts that switching was an essential part of the painting process.  Dkt. #48, p.5.

Defendants reply that the New York State Court of Appeals rejected the incidental or integral to a covered activity analysis in *Martinez v. City of New York*, 93 N.Y.2d 322 (1999).  Dkt. #56, pp.8-9; Dkt. #58-3, pp.3-4.

In *Martinez v. City of New York*, plaintiff was employed as an environmental inspector to provide asbestos inspection services during phase one of a two phase project to identify and remove asbestos from public schools in New York City.  93 N.Y.2d at 323.  Phase one was limited to inspection and identification of asbestos; removal work would not commence until phase two of the project.  *Id.*

-10-

Plaintiff was injured when he attempted to inspect an insulated pipe above a closet and fell.  *Id.*  The New York State Court of Appeals rejected plaintiff's claim pursuant to New York Labor Law § 240(1), stating:

> While the reach of section 240(1) is not limited to work performed on actual construction sites, the task in which an injured employee was engaged must have been performed during "the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure."  Here, plaintiff's work as an environmental inspector during phase one was merely investigatory, and was to terminate prior to the actual commencement of any subsequent asbestos removal work.  In fact, none of the activities enumerated in the statute was underway, and any future repair work would not even be conducted by [plaintiff's employer], but by some other entity.  Thus, plaintiff was "not a person 'employed' to carry out the repairs as that term is used" in section 240(1).

*Id.* at 326 (internal citations omitted).  The Court concluded by

> reject[ing] the analysis employed below which focused on whether plaintiff's work was an "integral and necessary part" of a larger project within the purview of section 240(1).  Such a test improperly enlarges the reach of the statute beyond its clear terms.

*Id.*

Subsequently, the New York State Court of Appeals considered a case in which plaintiff was injured while preparing air handling units for inspection as part of a contract involving "cleaning, repairing and rehabilitating air handling units, including supports, anchors and piping in several buildings."  *Prats v. Port Auth. of N.Y. & N.J.*, 100 N.Y.2d 878, 879-80 (2003).  The Court distinguished *Martinez*, noting that in that case, the

> Court emphasized that the separate, sequential phases involved different employees working for different

> contractors.  Under these circumstances, we held the
> inspections too remote from any covered work to fall within
> the statute's ambit.

Id. at 881.  Unlike *Martinez*, the Court of Appeals concluded that the work in *Prats*

> did not fall into a separate phase easily distinguishable from
> other parts of the larger construction project.  Plaintiff's
> inspection was not in anticipation of [defendant contractor's]
> work, nor did it take place after the work was done. The
> inspections were ongoing and contemporaneous with the
> other work that formed part of a single contract.  The
> employees who conducted inspections also performed
> other, more labor-intense aspects of the project.  Moreover,
> plaintiff worked for a company that was carrying out a
> contract requiring construction and alteration – activities
> covered by section 240(1).  This contrasts with the asbestos
> inspector in *Martinez*, who did not work for the company that
> would actually remove the asbestos.

*Id.*  The Court concluded that plaintiff was performing work within the scope of New

York Labor Law § 240(1), stating:

> He was a member of a team that undertook an enumerated
> activity under a construction contract, and it is neither
> pragmatic nor consistent with the spirit of the statute to
> isolate the moment of injury and ignore the general context
> of the work.  The intent of the statute was to protect workers
> employed in the enumerated acts, even while performing
> duties ancillary to those acts.

*Id.* at 882.

Thereafter, the New York State Court of Appeals considered a case

where plaintiff had completed repair work on an air conditioning unit and was injured as

he attempted to retrieve serial and model numbers from the unit during a "postrepair

inspection."  *Beehner v. Eckerd Corp.*, 3 N.Y.3d 751 (2004).  The New York State Court

of Appeals held that plaintiff was not engaged in an activity enumerated by New York

Labor Law § 240(1) at the time of his injury and affirmed summary judgment in favor of the defendant, stating:

> We will not "isolate the moment of injury," but here as in Martinez, there is a bright line separating the enumerated and nonenumerated work.

*Id.*

The instant case appears more akin to the facts presented in *Prats* than those in *Martinez* or *Beehner*.  At the time of his alleged injury, plaintiff was in the process of painting and stenciling the railcars in accordance with the scope of work set forth in the rider to the Railcar Equipment Lease between RCL and ECDC.  Dkt. #39-2, p.3.  Because no more than four railcars could fit in the paint shop at one time, the movement of cars in and out of the paint shop was ancillary to the plaintiff's painting duties.  Dkt. #37-3, pp.11, 18-19.  Accordingly, it is recommended that defendants' motions for summary judgment be denied with respect to this aspect of plaintiff's claim pursuant to Labor Law § 240(1).

**Elevated Work Site**

RCL and ECDC argue that plaintiff's injury is not encompassed by New York's Labor Law 240(1) because it was not caused by an elevation risk, but by the usual and ordinary dangers of a work site.  Dkt. #38, p.6; Dkt. #42-10, pp.4-6.  Moreover, RCL argues that the risk of alighting from a railcar does not call for any of the protective devices of the types listed in the statute.  Dkt. #38, p.10.

Plaintiff responds that the statute applies because plaintiff fell approximately 6 feet while engaged in his required duties.  Dkt. #48, p.9.

The New York State Court of Appeals has cautioned that

> Not every worker who falls at a construction site . . . gives rise to the extraordinary protections of Labor Law § 240(1). Rather, liability is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein.

*Narducci v. Manhasset Bay Assocs*., 96 N.Y.2d 259, 267 (2001).  In other words, it is insufficient that the injury resulted from an "elevation differential;" it must also be established that "the proper 'erection', 'construction', 'placement' or 'operation' of one or more devices of the sort listed in section 240(1) would allegedly have prevented the injury."  *Rocovich v. Consolidated Edison Co.*, 78 N.Y.2d 509, 514 (1991).

In *Rocovich*, the Court declined to afford coverage pursuant to Labor Law 240(1), regardless of the extent of the elevation differential, because it was "difficult to imagine how plaintiff's proximity to the 12-inch trough could have entailed an elevation-related risk which called for any of the protective devices of the types listed in section 240(1)."  *Id.* at 514-15.  Thereafter, the Court of Appeals determined, as a matter of law, that the risk of alighting from a construction vehicle which was not equipped to assist operators in their entry or exit from the vehicle "was not an elevation-related risk which calls for any of the protective devices of the types listed in Labor Law § 240(1)." *Bond v. York Hunter Construction, Inc.*, 95 N.Y.2d 883, 884-85 (2000), *citing Rocovich*, 78 N.Y.2d at 514-15.

-14-

In *Toefer v. Long Island Railroad*, the Court of Appeals determined that "workers who fall when working on, or getting down from the surface of a flatbed truck that is between four and five feet off the ground may not recover under Labor Law § 240(1), because their injuries did not result from the sort of "elevation-related risk" that is essential to a cause of action under that section."  4 N.Y.3d 399, 405 (2005).  In that case, plaintiff had climbed upon on a truck to cut the steel straps securing construction material to a trailer and fell as he began to step off the truck.  *Id.* at 406. The Court of Appeals opined that "[s]afety devices of the kind listed in the statute are normally associated with more dangerous activity than a worker's getting down from the back of a truck."  *Id.* at 408-09.  Thus, the Court of Appeals has recognized that "where a plaintiff was exposed to the usual and ordinary dangers of a construction site, and not the extraordinary elevation risks envisioned by Labor Law § 240(1), the plaintiff cannot recover under the statute."  *Id.* at 407 (internal quotation omitted).

The Court finds these cases analogous to the instant case.  Plaintiff's fall from the brake pipe connecting two railroad cars is not the type of elevation risk contemplated by Labor Law § 240(1), but is instead a usual and ordinary danger of a railroad yard.  Plaintiff's fall is not alleged to have been caused by the absence of a protective device listed in the statute, but by the absence of a crossover hand hold or step affixed to the railcars.  Plaintiff's suggestion that the defendant contractor was obliged to install such a device on the railroad cars in the absence of the inclusion of such devices in the scope of work, goes well beyond any requirement imposed by New York's Labor Law.  Accordingly, it is recommended that defendants' motions for

summary judgement be granted dismissing plaintiff's cause of action pursuant to New

York's Labor Law § 240(1).


## Proximate Cause

RCL and ECDC also argue that plaintiff's own actions were the sole

proximate cause of his injury.  Dkt. #38, p.10; 42-10, pp.6-7.  Specifically, RCL asserts

that "[b]ecause plaintiff failed to walk around [the railcars] or use the ladders and hand

grabs [on the railcars], it was his own action of stepping down onto the pipe rather than

a violation of the statute that was the sole proximate cause of his alleged fall.  Dkt. #38,

p.10.  Similarly, ECDC asserts that

> Plaintiff admitted that the brake on the other railcar could
> have been set from the ground.  Moreover, nothing
> prevented the plaintiff from walking around the line of
> railcars to reach the other side of the tracks.  Plaintiff chose
> to climb onto railcar AWXX 4121 in order to cross over to the
> other side of the tracks. Plaintiff's employer had instructed
> him to walk around a railcar if it was not safe to cross over.
> Plaintiff knew the subject railcar was wet as he climbed onto
> it.  Also, while climbing down from the railcar neither of
> plaintiff's hands were in contact with the railcar.  Clearly,
> plaintiff's own action were the sole proximate cause of his
> accident.

Dkt. #42-10, p.7.


Plaintiff responds that the cause of accident, as set forth in Ebenezer's

accident report, was the absence of a crossover platform or crossover handholds on

the AWXX 4121 car.  Dkt. #48, p.9.  Plaintiff also argues that defendants are attempting

to insert comparative negligence into the proximate cause analysis, which is improper.

Dkt. #48, pp.12-14.

"Where a plaintiff's actions [are] the sole proximate cause of his injuries

. . . liability under Labor Law 240(1) does not attach." *Robinson v. East Medical Center*,

LP, 6 N.Y.3d 550, 554 (2006).  A plaintiff's actions will be considered the sole proximate

cause of his injuries "if adequate safety devices are available at the job site, but the

worker either does not use or misuses them." *Id.*  However, a plaintiff's comparative

negligence cannot be a defense to liability pursuant to the statute.  *Blake*, 1 N.Y.3d at

289.  Thus, a plaintiff's fall from the top cap of a six-foot ladder that plaintiff knew was

too short for the work to be accomplished when plaintiff knew there were eight-foot

ladders available for his use at the job site was deemed the sole proximate cause of his

injuries as a matter of law.  *Robinson*, 6 N.Y.3d at 555.  Similarly, a plaintiff's failure to

lock the extension clips of a ladder before climbing it was deemed the sole proximate

cause of his injuries.  *Blake*, 1 N.Y.3d at 291.  Moreover, a plaintiff's act of standing on

an inverted bucket rather than retrieve a ladder available on the job site was determined

to be the sole proximate cause of his injury.  *Montgomery v. Federal Express Corp.*, 4

N.Y.3d 805, 806 (2005).


In the instant case, plaintiff's decision to board the AWXX railcar to reach

the brake on the other railcar does not demonstrate a failure to use or a decision to

misuse an available safety device.  Moreover, even if defendants' assertion that plaintiff

was instructed to walk around the railcars to set the brake from the ground were true, it

would be insufficient to insulate defendants from liability pursuant to Labor Law

§ 240(1).  *See Gordon v. Eastern Railway Supply, Inc.*, 82 N.Y.2d 555, 563 (1993)

("We have held, however, that an instruction by an employer or owner to avoid using

unsafe equipment or engaging in unsafe practices is not a 'safety device' in the sense

that plaintiff's failure to comply with the instruction is equivalent to refusing to use

available, safe and appropriate equipment.").  Accordingly, summary judgment is

inappropriate with respect to this aspect of defendants' motions.


### New York's Labor Law §241(6)

Section 241(6) of New York's Labor Law provides that:

All contractors and owners and their agents . . . when
constructing or demolishing buildings or doing any
excavating in connection therewith, shall comply with the
following requirements:

6.   All areas in which construction, excavation or
     demolition work is being performed shall be so
     constructed, shored, equipped, guarded, arranged,
     operated and conducted as to provide reasonable
     and adequate protection and safety to the persons
     employed therein or lawfully frequenting such places.
     The commissioner may make rules to carry into effect
     the provisions of this subdivision, and the owners and
     contractors and their agents for such work, except
     owners of one and two-family dwellings who contract
     for but do not direct or control the work, shall comply
     therewith.


The New York State Court of Appeals has recognized that this statute

"imposes a nondelegable duty upon an owner or general contractor to respond in

damages for injuries sustained due to another party's negligence in failing to conduct

their construction, demolition or excavation operations so as to provide for the

reasonable and adequate protection of the persons employed therein."  *Rizzuto v. L.A.*

*Wenger Contracting Co., Inc.*, 91 N.Y.2d 343, 350 (1998).  Thus, Labor Law § 241(6)

"imposes liability upon a general contractor *for the negligence of a subcontractor*, even

in the absence of control or supervision of the worksite."  *Id.* at 348-49.  However, the rule or regulation alleged to have been breached must be a "specific, positive command," mandating "compliance with concrete specifications" rather than a "general safety standard" reiterating common-law standards, which would "merely incorporate into the State Industrial Code a general duty of care."  *Id.*

### Contractors, owners and agents

ECDC argues that it may not be held liable pursuant to New York Labor Law § 241(6) because it did not contract for or exercise any control over the work performed by Ebenezer.  Dkt. #42-10, p.7.  As the language of this statute with respect to contractors, owners and agents is the same as that with respect to New York's Labor Law § 240(1), the Court incorporates that analysis, *supra*, into this discussion and recommends that ECDC's motion for summary judgment be granted with respect to the Labor Law § 241(6) claim.  *See also Kaleta v. New York State Elec. & Gas Corp.*, 41 A.D.3d 1257, 1259 (4th Dep't 2007) (summary judgment granted on Labor Law § 241(6) cause of action where defendant did not own the property, did not contract to have the work performed and did not control performance of the work).

### Applicability of Industrial Code Provisions

RCL and ECDC both argue that the industrial code provisions cited by plaintiff are inapplicable and insufficient to establish liability pursuant to section 241(6). Dkt. #38, pp.12-14; Dkt. #42-10, pp.8-10.

<u>12 N.Y.C.R.R. § 23-1.7(d)</u>

12 N.Y.C.R.R. §§ 23-1.7(d) provides as follows:

Slipping hazards. Employers shall not suffer or permit any
employee to use a floor, passageway, walkway, scaffold,
platform or other elevated working surface which is in a
slippery condition. Ice, snow, water, grease and any other
foreign substance which may cause slippery footing shall be
removed, sanded or covered to provide safe footing.

RCL and ECDC argue that plaintiff was not walking on an enumerated surface nor was he within a defined walkway or passageway at the time of his alleged fall.  Dkt. #38, p.13; Dkt. #42-10, p.9.

Plaintiff responds that the regulation is applicable because he was standing on a specified work area at the time of his alleged fall.  Dkt. #48, pp.18-19. Plaintiff, *citing Partridge v. Waterloo School District*, argues that if 12 N.Y.C.R.R. applies "to a worker standing on a counter top with slipping cardboard, it certainly applies at bar to the plaintiff, who slipped on a wet brake pipe adjacent to the sill of the railcar." Dkt. #48, p.20.

In *Partridge*, plaintiff was installing a window "while standing on a newly-installed countertop that, at the request of the carpenters working simultaneously with the window installers, was covered by a layer of cardboard to protect its surface."  12 A.D.3d 1054, 1055 (4th Dep't 2004).  When the window fell onto plaintiff, he slid from the countertop onto the floor. *Id.*  The Appellate Division determined that there was "an

issue of fact whether the presence of the loose cardboard on the countertop created a slippery condition on an elevated working surface." *Id.* at 1056.

In *Francis v. Aluminum Co. of Am.*, in contrast, plaintiff was unloading steel from a flatbed truck when he slipped on snow-covered steel and fell approximately four feet to the surface of the flatbed truck.  240 A.D.2d 985 (3rd Dep't 1997).  The Appellate Division determined that 12 N.Y.C.R.R. 23-1.7(d) was "inapplicable to the circumstances presented herein because the load of steel beams from which plaintiff fell did not constitute a floor, passageway or elevated area as set forth in the regulation." *Id.* at 987.  Similarly, in *Basile v. ICF Kaiser Engineers Corp.*, the Appellate Division determined that 12 N.Y.C.R.R. 23-1.7(d) did not apply to plaintiff, who slipped on a stack of pipes, because "the stack of pipes did not constitute a passageway or elevated work area."  227 A.D.2d 959 (4th Dep't 1996).

The Court finds the instant case more akin to *Francis* and *Basile* than to *Partridge*.  While it may have been foreseeable or even common practice for workers at Ebenezer to stand on the brake pipe as they were coupling and uncoupling railroad cars, that practice does not transform the brake pipe into an elevated work surface for purposes of 12 N.Y.C.R.R. 23-1.7(d).  Accordingly, it is recommended that defendants' motion for summary judgment be granted with respect to this aspect of plaintiff's cause of action pursuant to New York Labor Law 241(6).

-21-

<u>12 N.Y.C.R.R. § 23-1.8(c)(2)</u>

12 N.Y.C.R.R. § 23-1.8(c)(2) provides as follows:

Foot protection.  Every person required to work or pass in
water, mud, wet concrete or in any other wet footing shall be
provided with waterproof boots having safety insoles or with
pullover boots or rubbers over safety shoes.

RCL argues that this provision "is not intended to protect against slip and

fall incidents."  Dkt. #38, p.13.  ECDC argues that "plaintiff was not working in wet

conditions which required waterproof footwear" at the time of his alleged fall.  Dkt. #42-

10, p.9.


_____The Court agrees that this code is inapplicable to the instant case

because plaintiff was not working in water, mud, wet concrete or other wet footing and

there is no evidence that the type of boots required by this code, *to wit*, waterproof

boots, would have prevented him from slipping from a brakepipe covered with morning

dew as this code does not set standards for the outer soles of footwear, *e.g.*, it does not

require such footwear be equipped with nonslip soles or treads.  *See Ares v. State*, 80

N.Y.2d 959, 960 (1992) (affirming dismissal of claim where plaintiff "failed to establish

that a violation of a safety regulation promulgated pursuant to Labor Law § 241(6) was

the proximate cause of the accident.").


<u>12 N.Y.C.R.R. § 23-1.15</u>

_____Defendants argue that this provision is inapplicable because it does not

require safety railings in the first instance.  Dkt. #38, p.14; Dkt. #42-10. pp.9-10.

_____12 N.Y.C.R.R. § 23-1.15 provides construction specifications for safety railings whenever such railings are required by Part 23 of the NYCRR.  It is clear, however, that

> This regulation simply specifies the type of railing to be used when a railing is required.  It does not independently create an obligation to install a railing.

*Ryan v. Freidman Decorating Co.*, No. 01 Civ 385, 2005 WL 1802861, at *19 (S.D.N.Y. July 28, 2005); *see Partridge*, 12 A.D.3d at 1056 ("Section 23-1.15, entitled 'Safety railing,' does not specify when safety railings are required but, rather, sets forth only how they must be constructed when they are required.").  As a result, it is recommended that defendants' motion for summary judgment be granted and that plaintiff's 241(6) cause of action be dismissed in so far as it relies upon 12 N.Y.C.R.R. § 23-1.15.

12 N.Y.C.R.R. § 23-1.16(b)

12 N.Y.C.R.R. § 23-1.16 is entitled "Safety Belts, Harnesses, Tail Lines and Lifelines."  This provision provides, in relevant part, as follows:

> (b) Attachment required.  Every approved safety belt or harness provided or furnished to an employee for his personal safety shall be used by such employee in the performance of his work whenever required by this Part (rule) and whenever so directed by his employer.  At all times during use such approved safety belt or harness shall be properly attached either to a securely anchored hanging lifeline or to a tail line attached to a securely anchored hanging lifeline. Such attachments shall be so arranged that if the user should fall such fall shall not exceed five feet.

12 N.Y.C.R.R. § 23-1.16(b).

Defendants complain that plaintiff failed to disclose this provision in their interrogatory responses and argue that the provision is inapplicable because it does not specify when safety belts are required. Dkt. #56, pp.9-11; Dkt. #58-3, p.7.

Plaintiff notes that this provision was cited in his expert witness disclosure prior to the commencement of depositions and argues that defendants' failure to require the use of such a safety belt violates the regulation.  Dkt. #48, pp.17-18.

This provision is inapplicable because there is no evidence that the plaintiff was required to wear a safety belt when coupling or uncoupling railroad cars. *See Garlow v. Chappaqua Cent. Sch. Dist.*, 38 A.D.3d 712, 714 (2d Dep't 2007); *Spenard v. Gregware Gen. Contracting*, 248 A.D.2d 868, 871 (3rd Dep't 1998).

As none of the Industrial Code provisions cited by plaintiff are applicable to the factual circumstances asserted, it is recommended that the cause of action pursuant to New York's Labor Law § 241(6) be dismissed.

**Common Law Negligence/Labor Law § 200**

RCL argues that plaintiff's Labor Law 200 and common law negligence claims must be dismissed because RCL "had absolutely no control over how Ebenezer went about performing the work, let alone control over how the plaintiff switched cars, and got from one side of the track to the other."  Dkt. #38, p.15.

ECDC argues that it cannot be held liable because

> RCL contracted with Ebenezer Railcar Services for the
> modification of the railcars including railcar AWXX 4121.
> The modification work was performed at [Ebenezer's] site in
> West Seneca, New York.  Plaintiff was an employee of
> [Ebenezer]. ECDC did not contract for the modification work.
> Further, ECDC did not direct or control the means and
> methods used by [Ebenezer] and/or the plaintiff to modify
> the railcars, nor did it have any authority to exercise such
> direction or control.

Dkt. #42-10, p.12.  ECDC also argues that it cannot be held liable because it lacked

notice of the alleged unsafe condition, *to wit*, morning dew on the railcar.  Dkt. #42-10,

p.12.

Plaintiff argues the defendants "had both notice and control."  Specifically,

plaintiff asserts that

> the defendants had both actual and constructive notice that
> these railcars did not have crossover platforms and
> crossover handholds.  In negotiating this $2.5 million
> contract these defendants had a detailed scope of work
> document, which included cutting the cars in half to then
> increase their length by 6.5 feet, raising their height 3 feet,
> and adding other safety appliances – but not crossover
> boards and handholds.  Both of these defendants actually
> inspected the first set of cars that were so refurbished, and
> thereafter ECDC inspected all the remaining cars.

Dkt. #48, pp.20-21.

Section 200 of New York's Labor Law "is a codification of the common-law

duty imposed upon an owner or general contractor to provide construction site workers

with a safe place to work."  *Comes v. New York State Elec. & Gas Corp.*, 82 N.Y.2d

876, 877 (1993).  "An implicit precondition to this duty is that the party charged with that

responsibility have the authority to control the activity bringing about the injury." *Id.* (internal quotation omitted). Thus, where the alleged defect or dangerous condition arises from a subcontractor's methods or materials, and the owner or general contractor exercises no supervisory control over the operation, no liability attaches to the owner or general contractor under the common law or under Labor Law § 200." *Ross v. Curtis-Palmer Hydro-Electric Co.,* 81 N.Y.2d 494, 505 (1993).

In *Comes*, plaintiff was injured after his employer directed him to lift and carry a 14-foot steel I-beam unassisted. *Id.* The Court of Appeals granted summary judgment to the landowner because there was "no evidence that defendant exercised supervisory control or had any input into how the steel beam was to be moved." *Id.* In *Cottone v. Dormitory Auth. of the State of N.Y.*, a subcontractor asked the general contractor for plywood to construct a walkway to transport rolls of sod across muddy ground. 225 A.D.2d 1032 (4th Dep't 1996). As the subcontractor's employee walked across the plywood, it became muddy and wet, causing the employee to slip and fall. *Id.* The Appellate Division granted the general contractor's motion for summary judgment with respect to plaintiff's cause of action pursuant to Labor Law § 200 because the "dangerous condition arose from the subcontractor's methods, and defendant did not exercise any supervisory control over those methods." *Id.*

Similarly, in *Fisher v. WNY Bus Parts, Inc.*, the Appellate Division granted the general contractor's motion for summary judgment where the subcontractor's employee was injured when a forklift unloading steel from a flatbed trailer pinned

plaintiff's foot because the general contractor did not supervise or control the subcontractor's method of unloading steel.  12 A.D.3d 1138, 1139 (4th Dep't 2004). The Appellate Division noted that although the general contractor "exercised general supervisory control over the project and had the authority to correct unsafe practices, there [was] no evidence that [the general contractor] actually supervised plaintiff's actions on the day of the accident."  *Id.* at 1139-40; *see also Ricotta v. Praxis Biologics, Inc.*, 265 A.D.2d 878 (4th Dep't 1999) (general contractor's authority to stop plaintiff's work if subcontractor failed to correct safety concern identified by general contractor was insufficient to raise an issue of fact whether general contractor exercised control over plaintiff's work).

In contrast, the Court of Appeals denied summary judgment to a general contractor where the landowner's employee created a diesel fuel spill which caused a subcontractor's employee to slip and fall because the general contractor's duties included coordinating work so that the landowner's employees were not engaging in potentially hazardous activities in the immediate area where the subcontractor's employees were working.  *Rizzuto v. L.A. Wenger Contracting Co.*, 91 N.Y.2d 343, 353 (1998).

In the instant case, there is no evidence to suggest that either defendant supervised plaintiff's actions on the morning of the accident.  As a result, defendants should be granted summary judgment with respect to the cause of action pursuant to New York Labor Law § 200.

## Contractual Indemnification

RCL seeks a conditional judgment of contractual indemnification against ECDC in accordance with the terms of the lease agreement.  Dkt. #38, p.16.

ECDC seeks dismissal of RCL's cross-claim for contractual indemnification because "none of the 150 railcars became subject to the terms and conditions of the Railcar Equipment Lease until the car had been modified and then delivered and accepted by ECDC."  Dkt. #42-10, pp.13-14.  In support of its argument, ECDC relies upon section 4 and Rider 1 of the Railcar Equipment Lease.  Dkt. #42-10, p.14.

RCL's motion for contractual indemnification should be denied and ECDC's motion seeking dismissal of the cross-claim for contractual indemnification should be granted because the terms and condition of the lease, including the indemnification clause, were not in effect at the time of plaintiff's injury.  The Railcar Equipment Lease clearly specifies that the lease would commence upon acceptance of the railcars following their modification.  Dkt. #39-2.  As the modifications were not yet complete on this railcar, ECDC had no obligation to RCL at the time of plaintiff's fall.

## Common Law Indemnification

ECDC seeks dismissal of RCL's claim for common law indemnification and requests common law indemnification from RCL because

> On the date of the accident, ECDC was only an out-of-possession prospective sub-lessee of railcar AWXX 4121.

> Further, ECDC did not contract for the modification work, nor
> did it direct or control the means and methods used by
> [Ebenezer] and/or plaintiff to perform the modification work.
> Rather, RCL is the entity that hired [Ebenezer].

Dkt. #42-10, pp.14-15.


As the Court is recommending dismissal of plaintiff's complaint, the

defendants' cross-claims for common law indemnification are moot.  *See McDermott v.*

*City of New York*, 50 N.Y.2d 211, 217 (1980) (indemnity claim permits party that has

paid damages which should have been paid by another to seek payment from the

responsible party).


## CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that:

(1) RCL's motion (Dkt. #37), for summary judgment be
    **GRANTED** in so far as it seeks dismissal of plaintiffs'
    complaint and **DENIED** insofar as it seeks contractual
    indemnification from ECDC;

(2) plaintiff's motion (Dkt. #42), for partial summary
    judgment be **DENIED**; and

(3) ECDC's motion (Dkt. #47), for summary judgment be
    **GRANTED** in so far as it seeks dismissal of plaintiffs'
    complaint and dimsissal of RCL's cross-claims for
    contractual indemnification.


Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby


ORDERED, that this Report, Recommendation and Order be filed with the

Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Order and a copy of the Report and Recommendation to counsel for the parties.


**SO ORDERED.**


DATED:        Buffalo, New York
              July 16, 2008


                                        **s/ H. Kenneth Schroeder, Jr.**
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**